## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**MICHAEL DANE NYBERG, JR.**                    **CIVIL ACTION**

**versus**                                      **NO. 15-98**

**N. BURL CAIN, WARDEN**                        **SECTION: "C" (1)**

## REPORT AND RECOMMENDATION

      This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

      Petitioner, Michael Dane Nyberg, Jr., is a state prisoner incarcerated at the Louisiana State Penitentiary in Angola, Louisiana.  On October 31, 2012, he pleaded guilty under Louisiana

law to indecent behavior with a juvenile and computer-aided solicitation of a minor.[1]  On January 30, 2013, he was sentenced to a term of seventeen years imprisonment on the indecent behavior conviction and to a term of ten years imprisonment on the solicitation conviction.  It was ordered that those sentences run concurrently and without the benefit of probation, parole, or suspension of sentence.[2]

On or about September 3, 2013, petitioner filed an application for post-conviction relief with the state district court.[3] On September 11, 2013, the court denied that application, simply stating:  "This was a guilty plea with a PSI.  Previous sex conviction.  Post conviction release denied."[4]  His related writ applications were then likewise denied without additional reasons assigned by the Louisiana First Circuit Court of Appeal on February 18, 2014,[5] and the Louisiana Supreme Court on November 21, 2014.[6]

On January 13, 2015, petitioner filed the instant federal application seeking *habeas corpus* relief.[7]  The state does not challenge the timeliness of this federal application.

---

[1]  State Rec., Vol. I of I, minute entry dated October 31, 2012; State Rec., Vol. I of II, guilty plea form.

[2]  State Rec., Vol. I of II, minute entry dated January 30, 2013; State Rec., Vol. I of II, Reasons for Sentence.

[3]  State Rec., Vol. I of II.

[4]  State Rec., Vol. I of II.

[5]  State v. Nyberg, No. 2013 KW 1765 (La. App. 1st Cir. Feb. 18, 2014).

[6]  State *ex rel.* Nyberg v. State, No. 2014-KH-0604, 2014 WL 6725585 (La. Nov. 21, 2014).

[7]  Rec. Doc. 1.

### I.  Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  Courts have held that the "'contrary

to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning."  <u>Bell</u>, 535

U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals

has explained:

> A state court decision is contrary to clearly established precedent if
> the state court applies a rule that contradicts the governing law set
> forth in the [United States] Supreme Court's cases.  A state-court
> decision will also be contrary to clearly established precedent if the
> state court confronts a set of facts that are materially
> indistinguishable from a decision of the [United States] Supreme
> Court and nevertheless arrives at a result different from [United
> States] Supreme Court precedent.

<u>Wooten v. Thaler</u>, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets,

and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court

has held:  "[A] state-court decision is an unreasonable application of our clearly established

precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the

facts of a particular prisoner's case."  <u>White v. Woodall</u>, 134 S. Ct. 1697, 1706 (2014).  However,

the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state
> court unreasonably applies this Court's precedent; it does not require
> state courts to extend that precedent or license federal courts to treat
> the failure to do so as error.  Thus, if a habeas court must extend a
> rationale before it can apply to the facts at hand, then by definition
> the rationale was not clearly established at the time of the state-court
> decision.  AEDPA's carefully constructed framework would be
> undermined if habeas courts introduced rules not clearly established
> under the guise of extensions to existing law.

Id. (citations and quotation marks omitted).  Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law."  Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted).  The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one."  Bell, 535 U.S. at 694.  Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant *habeas* relief.  Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>
> If this standard is difficult to meet, that is because it was meant to be.  As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  It preserves authority to issue the writ in cases where there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther.  Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal.  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (citations omitted; emphasis added); see also

Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts – from

using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state

courts.").

The Supreme Court has expressly warned that although "some federal judges find [28

U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the law

and apply the strictly deferential standards of review mandated therein.  White v. Woodall, 134 S.

Ct. 1697, 1701 (2014).

II.  Petitioner's Claims

A.  Double Jeopardy

Petitioner's first claim is that his rights under the Double Jeopardy Clause have been

violated.  The protection against double jeopardy is enshrined in the Fifth Amendment and made

enforceable against the states through the Fourteenth Amendment.  Benton v. Maryland, 395 U.S.

784, 794 (1969); Rogers v. Lynaugh, 848 F.2d 606, 611 (5th Cir. 1988).  The United States Supreme

Court has explained:

> That guarantee has been said to consist of three separate
> constitutional protections.  It protects against a second prosecution
> for the same offense after acquittal.  It protects against a second
> prosecution for the same offense after conviction.  And it protects
> against multiple punishments for the same offense.

North Carolina v. Pearce, 395 U.S. 711, 717 (1969) (footnotes omitted), overruled in part on other

grounds, Alabama v. Smith, 490 U.S. 794, 802-03 (1989); see also Department of Revenue v. Kurth

Ranch, 511 U.S. 767, 769 n.1 (1994).  Petitioner's claim implicates the third category of cases, in

that he is arguing that indecent behavior with a juvenile and computer-aided solicitation of a minor are essentially the same offense for double jeopardy purposes.

Where, as here, a petitioner pleaded guilty, his ability to assert a double jeopardy claim on collateral review is limited.  As the United States Fifth Circuit Court of Appeals has explained:

> A guilty plea is more than a mere confession; it is an admission that the defendant committed the charged offense.  North Carolina v. Alford, 400 U.S. 25, 32, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970).  As a general rule, therefore, a convicted defendant may not collaterally attack a voluntary and intelligent guilty plea.  See Mabry v. Johnson, 467 U.S. 504, 508, 104 S.Ct. 2543, 2546, 81 L.Ed.2d 437 (1984); Tollett v. Henderson, 411 U.S. 258, 266-67, 93 S.Ct. 1602, 1607-08, 36 L.Ed.2d 235 (1973).  A voluntary and intelligent guilty plea does not become vulnerable to habeas corpus review simply because later judicial decisions indicate that the plea rested on a faulty premise or that the legal and factual evaluations of the defendant's counsel were incorrect.  Brady v. United States, 397 U.S. 742, 757, 90 S.Ct. 1463, 1473, 25 L.Ed.2d 747 (1970).

Taylor v. Whitley, 933 F.2d 325, 327 (5th Cir. 1991).  The Fifth Circuit then went on to note:  "A double jeopardy claim is not immune from the usual prohibition on collateral review of a guilty plea."  Id.  As a result, a federal *habeas* petitioner who voluntarily pleaded guilty will succeed on a double jeopardy claim only if the double jeopardy violation "is apparent on the face of the indictment or record." Id. at 328 (citing United States v. Broce, 488 U.S. 563 (1989)).  Here, that is not the case.

In the instant case, the bill of the information, as amended, provided:

**Count #1:**  On or between October 31, 2011 through November 07, 2011, in the Parish of Assumption, **MICHAEL DANE NYBERG, JR.** committed the offense of *La. R.S. 14:81(A)(2)* **INDECENT BEHAVIOR WITH A JUVENILE**, by transmitting electronic textual communications or an electronic visual communications

depicting lewd or lascivious, text(s) to S.W., date of birth: October 12, 2000, who he reasonably believed to be under the age of seventeen and reasonably believed to be at least two years younger than him with the with the [sic] intent of arousing or gratifying the sexual desires of either person.

***Count #2:***  On or between October 31, 2011 through November 07, 2011, in the Parish of Assumption, **MICHAEL DANE NYBERG, JR.** committed the offense of ***La. R.S. 14:81.3*** **COMPUTER-AIDED SOLICITATION OF A MINOR** in that defendant, being eighteen years of age or older, knowingly contacted or communicated, through the use of electronic textual communication, S.W., date of birth: October 12, 2000, who is a person that has not yet attained the age of seventeen or is a person he reasonably believed to have not yet attained the age of seventeen, for the purpose of, or with the intent to persuade, induce, entice, or coerce S.W. to engage or participate in sexual conduct.[8]

It must first be noted that it is immaterial for double jeopardy purposes that two offenses arise from the same course of conduct, so long as the offenses are in fact distinct.  See, e.g., United States v. Morgan, 437 Fed. App'x 354, 355-56 (5th Cir. 2011); Johnson v. Terrell, No. 95-30339, 1995 WL 581839, at *1 (5th Cir. Sept. 6, 1995).  Rather, as the United States Fifth Circuit Court of Appeals has explained:

We apply the Blockburger v. United States[, 284 U.S. 299 (1932),] test to determine whether two different statutes punish the same offense.  Blockburger requires us to compare the two statutes at issue and ask "whether each provision requires proof of an additional fact which the other does not".  If either statute contains no element not also found in the other statute, the statutes "fail" the Blockburger test and the defendant may not be punished under both of them "in the absence of a clear indication of contrary legislative intent".  Two statutory offenses need not be identical to constitute the same offense for double jeopardy purposes.  The Blockburger inquiry focuses on the statutory elements of the offenses, not on their application to the facts of a specific case before the court.  Thus, the question is not whether *this* violation of [the first statute] also constituted a violation

---

[8] State Rec., Vol. I of II, bill of information.

of [the second statute], but whether *all* violations of the former statute constitute violations of the latter.

United States v. Singleton, 16 F.3d 1419, 1422 (5th Cir. 1994) (emphasis in original) (footnotes omitted).

In the instant case, petitioner was charged with and pleaded guilty to indecent behavior with a juvenile under La. Rev. Stat. Ann. § 14:81(A)(2)[9] and computer-aided solicitation of a minor under La. Rev. Stat. Ann. § 14:81.3.[10]  Those are clearly distinct offenses, with each including at least one element missing from the other.  For example, the former offense requires that the electronic transmission in question depict "lewd or lascivious conduct, text, words, or images"

---

[9] La. Rev. Stat. Ann. § 14:81(A)(2) provides:

A. Indecent behavior with juveniles is the commission of any of the following acts with the intention of arousing or gratifying the sexual desires of either person:

....

(2) The transmission, delivery or utterance of any textual, visual, written, or oral communication depicting lewd or lascivious conduct, text, words, or images to any person reasonably believed to be under the age of seventeen and reasonably believed to be at least two years younger than the offender. It shall not be a defense that the person who actually receives the transmission is not under the age of seventeen.

[10]  In pertinent part, La. Rev. Stat. Ann. § 14:81.3 provides:

A. (1) Computer-aided solicitation of a minor is committed when a person seventeen years of age or older knowingly contacts or communicates, through the use of electronic textual communication, with a person who has not yet attained the age of seventeen where there is an age difference of greater than two years, or a person reasonably believed to have not yet attained the age of seventeen and reasonably believed to be at least two years younger, for the purpose of or with the intent to persuade, induce, entice, or coerce the person to engage or participate in sexual conduct or a crime of violence as defined in R.S. 14:2(B), or with the intent to engage or participate in sexual conduct in the presence of the person who has not yet attained the age of seventeen, or person reasonably believed to have not yet attained the age of seventeen.

with the intent to arouse or gratify sexual desires, while latter offense does not.  On the other hand, the latter offense requires the solicitation of the minor to engage or participate in sexual conduct, while the former does not.  Because each offense requires the proof of additional element which the other does not, there is no *federal* double jeopardy violation and relief should therefore be denied.

That said, this Court notes that *Louisiana* law provides independent protections against double jeopardy.  La. Const. art. I, § 15; La. Code Crim. Proc. art. 596.  However, this Court need not and does not reach the issue of whether petitioner's rights were violated under the state law protections against double jeopardy.  Federal *habeas corpus* relief may be granted only to remedy violations of the federal Constitution and laws of the United States; mere violations of state law will not suffice.  28 U.S.C. § 2254; Engle v. Isaac, 456 U.S. 107, 119 (1983); Brown v. Tanner, Civ. Action No. 11-1102, 2011 WL 4746563, at *4 (E.D. La. Aug. 29, 2011), adopted, 2011 WL 4746104 (E.D. La. Oct. 6, 2011).[11]

---

[11]  As was recently explained in a case arising out of the Western District of Louisiana:

> The Supreme Court in Blockburger v. U.S., 52 S.Ct. 180 (1932) stated that the rule is that where the same act or transaction constitutes a violation of two distinct statutes, the test to determine whether there are two offenses or only one, "is whether each provision requires proof of a fact which the other does not." 52 S.Ct. at 182.  Louisiana courts often refer to Blockburger but more often employ what is called a "same evidence test" that is broader in concept than Blockburger.  Petitioner argues under both approaches, but federal habeas applicants must claim violations of a federal constitutional right.  Petitioner has not cited any Supreme Court decision that clearly establishes the same evidence test as part of federal double jeopardy law.  The Supreme Court has actually "disclaimed any intention of adopting a 'same evidence' test" in double jeopardy cases.  U.S. v. Felix, 112 S.Ct. 1377, 1382 (1992).  Accordingly, the undersigned has not applied the same evidence test in habeas cases.  See Hampton v. Warden, 2013 WL 5673622 (W.D. La. 2013).

Turks v. Warden, Avoyelles Correctional Center, Civ. Action No. 11-cv-0391, 2014 WL 940554, at *3 (W.D. La. Mar. 10, 2014).

## B.  Ineffective Assistance of Counsel

Petitioner's second claim is that he received ineffective assistance of counsel.  The United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel.  A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense.  Strickland v. Washington, 466 U.S. 668, 697 (1984).  A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."  Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000).

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.  See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001).  "Counsel's performance is deficient if it falls below an objective standard of reasonableness."  Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998).  Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.  See Strickland, 466 U.S. at 689.  "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690).  A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to satisfy the prejudice prong of an ineffective assistance of counsel claim in a case involving a guilty plea, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); accord James v. Cain, 56 F.3d 662, 667 (5th Cir. 1995).

Petitioner's ineffective assistance of counsel claim was rejected by the state courts in the post-conviction proceedings. Because such a claim presents a mixed question of law and fact, this Court must defer to the state court decision rejecting petitioner's claim unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002). Moreover, the United States Supreme Court has explained that, under the AEDPA, federal *habeas corpus* review of ineffective assistance of counsel claims is in fact *doubly* deferential:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.
>
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's

specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."  Ibid.  "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court."  Knowles v. Mirzayance, 556 U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

Harrington v. Richter, 562 U.S. 86, 101 (2011) (citation omitted).  The Supreme Court then explained:

> Surmounting Strickland's high bar is never an easy task.  An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve.  Even under *de novo* review, the standard for judging counsel's representation is a most deferential one.  Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge.  It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence.  The question is whether an attorney's representation amounted to incompetence under prevailing professional norms,  not whether it deviated from best practices or most common custom.
>
> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. *The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.*  The Strickland standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d).  *When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.*

Id. at 105 (citations omitted; emphasis added).  For the following reasons, the Court finds that, under those stringently deferential standards, it simply cannot be said that relief is warranted with respect to petitioner's ineffective assistance of counsel claim.

Here, petitioner argues that his counsel performed deficiently in several respects.  For example, he opines that his counsel failed to conduct proper discovery, investigate the case, interview and call witnesses, challenge the validity of the arrest and search, move to quash the bill of information on double jeopardy grounds, move for an independent expert, and prepare and present a defense.  However, this Court may pretermit a finding on the issue of whether counsel in fact performed deficiently, because petitioner's claim fails on the prejudice prong of the Strickland analysis.[12]

As noted, with respect to the prejudice prong, "[a] prisoner claiming counsel's ineffectiveness rendered his guilty plea involuntary must show:  'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'"  United States v. Fernandez, 317 Fed. App'x 388, 389 (5th Cir. 2009) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)).  In the instant case, petitioner fails even to expressly allege that he would not have pleaded guilty but for his counsel's purported failures.  Further, in any event, the Court finds that there is no reasonable probability that petitioner would have insisted on going to trial for the following reasons.

---

[12]   If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong.  Strickland, 466 U.S. at 697.

First, there was little doubt that petitioner would have been convicted at trial.  He does not event suggest that he was not the perpetrator,[13] and, because the electronic communications were preserved, there was clear evidence of his guilt.

Second, by agreeing to plead guilty and avoiding trial, petitioner was able to secure substantial concessions from the state.  As the state district court judge noted in his Reasons for Sentence, petitioner faced up to a twenty-five-year sentence for the crime of indecent behavior with juvenile and up to a twenty-year sentence for the crime of computer-aided solicitation of a minor. In return for his guilty pleas, he reduced his sentencing exposure to a total of seventeen years.[14] Moreover, it is evident even from his federal application that his desire to limit his criminal exposure was an important concern, in that he "avers that he was threatened multiple times with the maximum sentence allowed or Federal Charges if he did not enter a plea of guilty to the State's charges." Although he was offended by that tactic, it is beyond cavil that a negotiated plea is not rendered involuntary or invalid solely because the decision to enter the plea was "motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged."  Brady v. United States, 397 U.S. 742, 751 (1970).  As the United States Supreme Court has noted:

> The plea bargaining process necessarily exerts pressure on defendants
> to plead guilty and to abandon a series of fundamental rights, but we

---

[13]  In his federal application, petitioner concedes that he was the person who texted the victim, noting that "he exercised very poor judgment."  Rec. Doc. 1, p. 36; see also Rec. Doc. 1, p. 42.

[14]  State Rec., Vol. I of II, Reasons for Sentence.

> have repeatedly held that the government may encourage a guilty plea by offering substantial benefits in return for the plea. While confronting a defendant with the risk of more severe punishment clearly may have a discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices is an inevitable – and permissible – attribute of any legitimate system which tolerates and encourages the negotiation of pleas.

United States v. Mezzanatto, 513 U.S. 196, 209-10 (1995) (quotation marks, brackets, and citations omitted). Here, the fact that petitioner was not particularly enamored of the choices available to him is of no moment, and it in no way rendered his choice illusory or his plea coerced.

In summary, because petitioner's conviction at a trial could be anticipated with a high degree of certainty, he lost little by pleading guilty. On the other hand, he gained much: a guaranteed substantial reduction in his potential sentencing exposure.

For all of these reasons, it is clear that petitioner has not demonstrated that the state court decision rejecting his ineffective assistance of counsel claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, utilizing the AEDPA's doubly deferential standards of review applicable to such claims, this Court should likewise deny relief.

### C. Excessive Sentence/Abuse of Authority/Vindictive Prosecution

Petitioner next claims that his sentences were excessive. In its response, the state argues that this claim is procedurally barred from federal review. The United States Fifth Circuit Court of Appeals has held:

> A claim that a state has withheld a federal right from a person in its custody may not be reviewed by a federal court if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal

> claim and an adequate basis for the court's decision.  To satisfy the "independent" and "adequate" requirements, the dismissal must "clearly and expressly" indicate that it rests on state grounds which bar relief, and the bar must be strictly or regularly followed by state courts, and applied to the majority of similar claims.  This rule applies to state court judgments on both substantive and procedural grounds.

Finley v. Johnson, 243 F.3d 215, 218 (5th Cir. 2001) (citations omitted).  Moreover, where a lower court has rejected a claim on procedural grounds, later opinions upholding that decision are presumed to rely on the same grounds if reasons are not assigned.  Id. ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim are presumed to rest upon the same ground.").

   The state is correct in arguing that the state courts could have denied petitioner's excessive sentence claim on state procedural grounds.  Article 930.3 of the Louisiana Code of Civil Procedure sets forth the limited grounds on which a petitioner may seek post-conviction relief under state law, and the Louisiana Supreme Court has made clear that article 930.3 does not permit post-conviction review of sentencing errors.  In State ex rel. Melinie v. State, 665 So.2d 1172 (La. 1996), the Supreme Court held:

> We grant the application in order to rule definitively on the issue of whether a person may raise the question of excessiveness of sentence in a post-conviction application.  La. Code Crim. Proc. art. 930.3, which sets out the exclusive grounds for granting post-conviction relief, provides no basis for review of claims of excessiveness or other sentencing error post-conviction.  See State v. Gibbs, 620 So.2d 296 (La.App. 3d Cir. 1993); cf. State ex rel. Glover v. State, 93-2330, p. 7, 11-14 (La. 9/5/95), 660 So.2d 1189, 1194, 1196-98. Accordingly, relator's claim for post-conviction relief based on the excessiveness of his sentence is denied.

However, although the state courts *could have* denied this claim on procedural grounds, there is no indication that they in fact did so.  On the contrary, as already noted, the state district court denied petitioner's post-conviction application by stating only: "This was a guilty plea with a PSI.  Previous sex conviction.  Post conviction release denied."[15]  His related writ applications were then likewise denied without additional reasons assigned by the Louisiana First Circuit Court of Appeal[16] and the Louisiana Supreme Court.[17]  There was no reference by any of the state courts to article 930.3 or Melinie.

Of course, the state courts' failure to reference a state procedural rule does not necessarily preclude the application of a procedural bar.  It is true that, in Harris v. Reed, 489 U.S. 255, 263 (1989), the United States Supreme Court held:  "[A] procedural default does not bar consideration of a federal claim on either direct or habeas review *unless* the last state court rendering a judgment in the case *clearly and expressly* states that its judgment rests on a state procedural bar."  Id. at 263 (emphasis added; quotation marks omitted).  However, the Supreme Court later explained that the foregoing holding in Harris, when read in context of the entire opinion, is limited:  "A predicate to the application of the Harris presumption is that the decision of the last state court to which the petitioner presented his federal claims *must fairly appear to rest primarily on federal law or to be interwoven with federal law*."  Coleman v. Thompson, 501 U.S. 722, 735 (1991) (emphasis added).  The Supreme Court therefore explained:

---

[15]  State Rec., Vol. I of II.

[16]  State v. Nyberg, No. 2013 KW 1765 (La. App. 1st Cir. Feb. 18, 2014).

[17]  State *ex rel.* Nyberg v. State, No. 2014-KH-0604, 2014 WL 6725585 (La. Nov. 21, 2014).

After <u>Harris</u>, federal courts on habeas corpus review of state prisoner claims, like this Court on direct review of state court judgments, will presume that there is no independent and adequate state ground for a state court decision when the decision fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion. *In habeas, if the decision of the last state court to which the petitioner presented his federal claims fairly appeared to rest primarily on resolution of those claims, or to be interwoven with those claims, and did not clearly and expressly rely on an independent and adequate state ground, a federal court may address the petition.*

<u>Id</u>. at 734-35 (emphasis added; quotation marks omitted).

Applying the foregoing rules in this case presents a quandary.  On the one hand, Louisiana law is clear that sentencing errors are not cognizable on post-conviction review.  On the other hand, Louisiana state courts generally clearly and expressly rely on <u>Melinie</u> when refusing to consider such claims.[18]  This Court is unsure what to make of the instant situation where the state courts failed to reference to the procedural rule and instead appeared to dismiss the post-conviction application on the merits, but did so without citing *any* provision of either state or federal law.  Further, the state courts made no reference at all to the excessive sentence claim in their decisions.[19]

---

[18]  For example, a quick Westlaw check reveals more than two thousand Louisiana state court decisions citing <u>Melinie</u>.

[19]   This Court is, of course, aware that the United States Fifth Circuit Court of Appeals has noted:

There must be more than silence.  In some form, the state court has to make a fair indication that the merits of the claim were reached.  When the dismissal is silent, this Court *looks to the arguments made in state court* to try to determine whether the dismissal was based on independent and adequate state law or whether instead it relied on or was interwoven with federal law.

<u>Canales v. Stephens</u>, 765 F.3d 551, 566 (5th Cir. 2014) (emphasis added; citation and quotation marks omitted).  Here, however, no opposition to petitioner's application was filed in the state courts.

In light of the foregoing, it is at least questionable whether petitioner's claim is procedurally barred.  Fortunately, this Court need not resolve that issue, because the claim clearly fails on the merits for the following reasons.[20]

In the instant case, the state district court judge explained his sentencing decision as follows:

> THIS is the case of a thirty-three (33) year old white male, namely MICHAEL DANE NYBERG, JR., officially classified as a second felony offender, who pled guilty on October 31, 2012 to Indecent Behavior with Juvenile and Computer-Aided Solicitation of a Minor.  Sentencing was deferred and the Court ordered a Pre-Sentence Investigation report in order to assist in making a fair decision on sentencing.  The Pre-Sentence Investigation report was received by the Court and made available to the defendant and his counsel, John A. Gutierrez.  The report is attached hereto and made a part of these Reasons for Sentence.
>
> The Department of Public Safety & Corrections, Division of Probation & Parole, stated that the defendant has a previous sex offense conviction out of the United States District Court Southern District of Florida.  According to the Criminal Code of Procedure, anyone who commits the crime of Indecent Behavior with Juvenile on a victim under the age of thirteen years old when the offender is seventeen years of age or older, shall be punished by imprisonment at hard labor for not less than two nor more than twenty-five years with at least two years of the sentence imposed shall be without benefit of parole, probation, or suspension of sentence.  Whoever commits the offense of Computer-aided Solicitation of a Minor when the victim is under thirteen years old, shall be fined not more than ten thousand dollars and shall be imprisoned at hard labor for not less

---

[20]   A federal court need not decide whether a claim is procedurally barred if the claim clearly fails on the merits.  <u>Glover v. Hargett</u>, 56 F.3d 682, 684 (5th Cir. 1995); <u>Wiley v. Puckett</u>, 969 F.2d 86, 104 (5th Cir. 1992); <u>Green v. Cain</u>, Civ. Action No. 12-2090, 2015 WL 546711, at *10 n.21 (E.D. La. Feb. 10, 2015); <u>Lande v.Cooper</u>, Civ. Action No. 11-3130, 2013 WL 5781691, at *26 n.68 (E.D. La. Oct. 25, 2013); <u>Corzo v. Murphy</u>, Civ. Action No. 07-7409, 2008 WL 3347394, at *1 n.5 (E.D. La. July 30, 2008); <u>Lee v. Cain</u>, Civ. Action No. 06-9669, 2007 WL 2751210, at *9 (E.D. La. Sept. 18, 2007).

than ten nor more than twenty years, without benefit of probation, parole or suspension of sentence.

The defendant was convicted under case number 01-701-CR-ROETTGER-1 in April, 2002 in Federal Court in Ft. Lauderdale, Florida of Attempting to Persuade a Minor to Engage in Sexual Activity through the Use of the Internet. Defendant was sentenced to three years probation and was required to register as a sex offender. Since the defendant is currently a convicted sex offender and has continued to engage in inappropriate behavior with juveniles, and has shown no remorse for the offenses that he committed, the Department of Public Safety & Corrections, Division of Probation & Parole ... recommends that the defendant be sentence [sic] to the maximum penalty allowed under Louisiana law for the above offenses to which he pled guilty. They further recommend that the sentences run consecutively to each other.

There was an agreement between the defendant and the District Attorney to cap the sentence at seventeen (17) years.

After considering the report thoroughly and further considering the facts of the case, the Court believes the defendant should be sentenced as follows:

THEREFORE, **IT IS THE SENTENCE OF THIS COURT** that the defendant, MICHAEL DANE NYBERG, JR., be committed to the Louisiana Department of Corrections for seventeen (17) years on the charge of Indecent Behavior with a Juvenile, and ten (10) years on the charge of Computer Aided Solicitation of a Minor, the sentences to run concurrent, with credit for time served for a total sentence of seventeen (17) years without benefit of probation, parole, or suspension of sentence.[21]

---

[21] State Rec., Vol. I of II, Reasons for Sentence. As noted, the state court judge observed that petitioner had shown no remorse for his crimes. This Court notes that his lack of remorse remains unchanged even now. For example, he still repeatedly blames the victim. See, e.g., Rec. Doc. 1, p. 35 ("[I]t was the Sheriff's daughter who abused the services of textPlus/gogii and not Nyberg. It was the alleged victim using the app illegally, yet Nyberg was accused of soliciting the minor."). He argues that "[t]his case was blown way out of proportion." Rec. Doc. 1, p. 36. He argues that the victim's father overreacted. Rec. Doc. 1, p. 43 ("Petitioner submits that if other underage minor females had been caught by a parent using an app that required a certain age, the parent or parents, would have been very upset with their daughter for being on the app illegally, and not so much the male she was chatting with.").

To the extent petitioner is now arguing that his sentences are excessive or otherwise inappropriate under Louisiana law, his claim is not cognizable in this federal proceeding.  Federal *habeas corpus* relief is available only to correct violations of federal constitutional law and, therefore, this Court does not sit to review alleged errors of state law.  Narvaiz v. Johnson, 134 F.3d 688, 695 (5th Cir. 1998).  Accordingly, this Court will not review the legality of petitioner's sentences under state law.  Phillips  v. Cain, Civ. Action No. 13-5868, 2014 WL 4425751, at *10 (E.D. La. Sept. 8, 2014), adopted, 2014 WL 5080246 (E.D. La. Sept. 26, 2014); Brunet v. Goodwin, Civ. Action No. 12-1974, 2013 WL 623505, at *12 (E.D. La. Jan. 22, 2013), adopted, 2013 WL 619278 (E.D. La. Feb. 19, 2013).

To the extent that petitioner is claiming that his sentences are excessive under the Eighth Amendment of the United States Constitution, his claim is without merit.  Because there was only brief electronic communications between petitioner and the victim with no actual physical contact, one could perhaps argue that his sentences are harsh.  Nevertheless, simply because a penalty is harsh does not mean that it is unconstitutionally excessive.  For the following reasons, petitioner's sentences do not cross that impermissible line.

In Solem v. Helm, 463 U.S. 277, 284 (1983), the Supreme Court held that the Eighth Amendment "prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed."  "This constitutional principle is tempered, however, by the corollary proposition that the determination of prison sentences is a legislative prerogative that is primarily within the province of legislatures, not courts."  United States v. Gonzales, 121 F.3d 928, 942 (5th Cir. 1997) (citing Rummel v. Estelle, 445 U.S. 263, 274-76 (1980)).  "[C]ourts must grant

substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes." Gonzales, 121 F.3d at 942 (quotation marks omitted). "[T]herefore, it is firmly established that successful challenges to the proportionality of punishments should be exceedingly rare." Id. (quotation marks omitted).

Interpreting Solem in light of intervening precedent, the United States Fifth Circuit Court of Appeals has set forth the framework to be used when analyzing a claim that a sentence is excessive:

> [W]e will initially make a threshold comparison of the gravity of [petitioner's] offenses against the severity of his sentence. Only if we infer that the sentence is grossly disproportionate to the offense will we then ... compare the sentence received to (1) sentences for similar crimes in the same jurisdiction and (2) sentences for the same crime in other jurisdictions.

McGruder v. Puckett, 954 F.2d 313, 316 (5th Cir. 1992).

The Fifth Circuit has noted that Rummel v. Estelle, 445 U.S. 263 (1980), "establishes a benchmark for disproportionate punishment under the Eighth Amendment." Gonzales, 121 F.3d at 943. In Rummel, the Supreme Court upheld a petitioner's sentence to life imprisonment for obtaining $120.75 under false pretenses. The sentence was imposed under a Texas recidivist statute and took into account petitioner's prior convictions for fraudulent use of a credit card and passing a forged check. The Fifth Circuit observed:

> We acknowledge that the distinction between constitutional sentences and grossly disproportionate punishments is an inherently subjective judgment, defying bright lines and neutral principles of law. Nevertheless, we can say with certainty that the life sentence approved in Rummel falls on the constitutional side of the line, thereby providing a litmus test for claims of disproportionate punishment in violation of the Eighth Amendment.

Gonzales, 121 F.3d at 943 (footnote omitted).

- 23 -

Here, petitioner's sentences fell within the ranges provided by law, and he was already a convicted sex offender for having previously attempted to use the internet to persuade a minor to engage in sexual activity.  In light of those considerations, as well as the finding in <u>Rummel</u> that a *life* sentence was not excessive for the relatively minor offenses involved in that case, this Court cannot conclude that petitioner's sentences under the more serious circumstances here are grossly disproportionate under federal law.  Because the sentences are not grossly disproportionate, this Court's "inquiry is finished."  <u>Gonzales</u>, 121 F.3d at 942.

Lastly, petitioner's contention that he was the victim of an "abuse of authority" and a "vindictive prosecution" is so patently meritless that it requires no extensive consideration.  In connection with the contention, he offers nothing other than his own wholly unsupported speculation that officials prosecuted his case with unusual zeal.  That, of course, is insufficient.  <u>See, e.g.</u>, <u>Conrad v. Cain</u>, No. 99-30008, 1999 WL 706107 (5th Cir. Aug. 18, 1999) ("In his attempt to establish vindictiveness, Conrad relies exclusively on conclusional statements.  Accordingly, he has not carried his burden, by a preponderance of the evidence, that the prosecutor acted vindictively.").  Further, in addition to be entirely speculative, his underlying contention that he was prosecuted because the victim was the daughter of the local sheriff ignores a crucial point:  law enforcement officers and their families are obviously entitled to the same protections under the law as other crime victims, and defendants are not entitled to less fervent prosecutions merely because their chosen victims have such affiliations.

## **RECOMMENDATION**

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Michael Dane Nyberg, Jr., be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[22]

New Orleans, Louisiana, this eleventh day of March, 2015.



**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**

---

[22] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.